**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 20-216** |
| **MALIK WALKER** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and Robert E. Eckert, Assistant United States Attorney, respectfully files this sentencing memorandum regarding defendant Malik Walker.

## I.     BACKGROUND

On August 4, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned a one-count indictment charging the defendant with distribution of 28 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count One).  On March 17, 2021, Walker plead guilty to count One of the indictment in accordance with a guilty plea agreement.  A sentencing hearing has been scheduled for July 7, 2021, at 2:00 p.m., before the Honorable Joel H. Slomsky.

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence of 120 months imprisonment, eight years of supervised release, and a $100 special assessment.

## II.    FACTS OF THE CASE

On March 25, 2019, law enforcement interviewed a confidential source, herein referred to as CS-1.  CS-1 informed investigators that he knows an individual known to him as Malik

Walker.  Walker resides at 6611 N. 5th Street, Philadelphia, PA.  CS-1 told investigators that

WALKER was distributing illicit narcotics in and around areas of Southwest Philadelphia.  On

April 15, 2019, CS-1 conducted a recorded Facetime call with WALKER where they discussed a

drug deal to occur later that day.

That same day, law enforcement personnel met with CS-1 and searched his person with

negative results.  They then provided him with $1,500 in pre-recorded funds to purchase crack

cocaine from Walker.  Law enforcement personnel then drove CS-1 to the area around the

Freddy Grocery, located at 3412 Fairmount Ave, where the deal was expected to take place.

They then outfitted CS-1 with audio/video recording equipment and activated the equipment.

While under the surveillance of ATF Task Force Officers, CS-1 walked to the Freddy Grocery.

Four minutes later, they observed CS-1 enter the store.  At 12:41, Walker arrived and CS-1 got

into his vehicle, a silver Toyota Avalon with PA license plate KXY-9363.  Two minutes later,

CS-1 got out of the car and walked away.

Agents and officers then met CS-1 at a pre-determined meet location.  CS-1 reported the

following: upon arrival to the store, he called Walker and told him that he was at the store.

Walker told the CS-1 that he would be there in ten minutes.  Once Walker arrived, he told CS-1

to come inside of his silver Toyota Avalon.  CS-1 did so and upon getting in the car noticed that

Walker had the crack cocaine on his lap.  Once CS-1 got into the car, Walker handed him the

crack cocaine.  CS-1 then gave Walker the $1,500 in government funds.  Once the deal was

completed, CS-1 got out of the vehicle and left the area.  CS-1's account of the transaction was

corroborated by the audio/video recording.

After travelling to the predetermined locations, ATF special agents retrieved the

purchased crack cocaine from CS-1.  Law enforcement officers then field-tested the purchased

crack cocaine, which tested positive for the presence of cocaine. A later laboratory analysis conducted by the Philadelphia Police Department Chemistry Laboratory determined that the substance sold by Mr. Walker to CS-1 contained a detectable amount of cocaine base ("crack") and weighed 33.04 grams.

### III.  LEGAL STANDARD

This Court must follow a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence of 120 months imprisonment, eight years of supervised release, and a $100 special assessment.

IV.     **SENTENCING CALCULATION**

A.      **Statutory Maximum Sentence**

This Court may impose the following statutory maximum and mandatory minimum

sentence on Count One, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)—a maximum 40 years'

imprisonment and a mandatory minimum of five years imprisonment, at least four years up to

lifetime of supervised release, a $5,000,000 fine, and a $100 special assessment.

B.      **Sentencing Guidelines Calculation**

The presentence report correctly calculates the defendant's guideline range at 188-235

months in prison.  The presentence report determined that the government recovered a total of

33.04 grams of cocaine base ("crack") that were attributed to the defendant.   PSR ¶ 20.  Thus,

the defendant's base offense level is 24 based on USSG § 2D1.1(a)(5), (c)(8) because the offense

involved between 28 grams but less than 112 grams of crack cocaine.  PSR ¶ 23.  However, the

presentence report also determined that the defendant is a career offender under USSG

4B1.2(b)(2) because he has two or more prior felony convictions for a controlled substance

offense within the last 15 years.  PSR ¶ 26.  Because the statutory maximum for the sole count of

conviction in this case is 25 years or more, the offense level is a 34.  PSR. ¶ 26.  After

subtracting three levels for acceptance of responsibility, the total offense level is 31.  PSR ¶ 27-

28.

Since the defendant was determined to be a career offender, his criminal history category

is automatically a VI.  PSR ¶ 41; USSG § 4B1.1(b).  In fact, the defendant has a series of felony

convictions for controlled substance offenses that stretch back decades.  In August of 1999, the

defendant was first convicted of possession with the intent to deliver a controlled substance and

sentenced to two years of probation.  PSR ¶ 34.  In October of 1999, the defendant was again

convicted of possession with the intent to deliver a controlled substance and sentenced to six to 23 months incarceration. PSR ¶ 33. Neither of these convictions however are scored because they occurred more than 15 years prior to the commission of the instant offense of conviction.

Next, in July and October of 2002, the defendant was again convicted, in two separate cases, of possession with the intent to deliver a controlled substance and sentenced to 36 to 72 months imprisonment to run concurrently. PSR ¶ 36-37. Finally, in February of 2009, the defendant was once again convicted of possession with intent to deliver a controlled substance and sentenced to six to 12 years in state prison. PSR ¶ 38. The defendant was on state parole in this last case when he committed the instant offense of conviction. Each of the three convictions noted in this paragraph receive three criminal history points and an additional two points are added because the defendant was on supervision when he committed the offense of conviction for a total of 11 criminal history points. PSR ¶ 39-41. However, as indicated previously the defendant automatically receives a criminal history category of VI because he is a career offender.

The applicable guideline range for an offense level of 31 and a criminal history category of VI is 188-235 months' imprisonment. USSG Sentencing Table.

V.    **GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING**

A.    **Sentencing Factors**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the parties' recommended sentence is an appropriate sentence in this case. The Court must consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense; (3) the need to afford

adequate deterrence to criminal conduct, and to protect the public from further crimes of the

defendant; (4) the need to provide the defendant with educational or vocational training, medical

care, or other correctional treatment in the most effective manner; (5) the guidelines and policy

statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar

conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §

3553(a).

### B.     Application

The relevant § 3553(a) factors will be discussed in turn.

#### 1.     The Nature and Circumstances of the Offense

This was a serious offense. The defendant, notwithstanding his status on state parole for

a felony drug offense, sold crack cocaine to a confidential informant. This offense is aggravated

by the defendant's repeated convictions for felony drug offenses.

#### 2.     The History and Characteristics of the Defendant

The defendant is a 42-year-old male from Philadelphia who had been living in

Philadelphia at the time of his arrest. PSR ¶ 58. The defendant is unmarried and has six

children. PSR ¶ 58-59. The defendant was residing with his mother at the time of his arrest.

PSR ¶ 58. He plans to return to his mother's residence or to the residence of his girlfriend who is

also the mother of his youngest child. PSR ¶ 58-59.

### 3. The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment

There is a strong need to impose a custodial sentence that reflects the seriousness of these offenses, promotes respect for U.S. laws, and provides just punishment. The Philadelphia region is plagued by drug trafficking and is burdened by the social and human costs that flow from the trafficking and abuse of these highly-addictive drugs. It is imperative, therefore, that the defendant's conduct be punished accordingly for his efforts that supplied significant quantities of crack cocaine into Philadelphia. The defendant's conduct in this case demonstrates that he has no respect for the laws of this country, and his conduct supports a sentence of imprisonment.

### 4. The Need for Adequate Deterrence and Protection of Public

The need for adequate deterrence of this type of crime is great. Groups of drug traffickers acting together pose a tremendous threat to society because there is great power that lies in numbers, the ability to pool resources, and the ability to insulate and protect others in the group from law enforcement. Given the prevalence of drug crimes in this region, the need to deter others from similar crimes is especially important. Furthermore, the recommended sentence protects the public from further crimes by the defendant, for at least as long as he remains in prison.

### 5. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.

### 6. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants

Adherence to the recommended guideline range is generally the best course for assuring that the defendant's sentence is consistent with those imposed nationwide on similarly-situated offenders. Here, in accordance with the terms of the plea agreement entered by the parties, the government requests a downward variance to 120 months. The government recommends that the Court accept the plea agreement and impose the 120-month sentence for the following reasons.

The defendant is being sentenced for the possession with the intent to distribute 33 grams of crack which is just above the mandatory minimum of 28 grams. Given that the career offender guidelines that apply to this offense would encompass the range of 28 to 279 grams of crack cocaine, that mitigates in favor of the plea agreement. Further, given that the defendant faces a significant term of incarceration before the state parole board for his role in this offense, the downward variance to 120 months is an appropriate sentence in this case. For all of these reasons, the government respectfully submits that the variance requested by the government and agreed to by the parties is appropriate and asks the Court to impose the sentence set forth in paragraph five of the GPA: 120 months imprisonment, eight years of supervised release, a $100 special assessment, and a fine, if any, left to the discretion of the Court.

### 7. Restitution

There is no restitution in this case.

## VII.    CONCLUSION

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition

of a sentence of 120 months' imprisonment in this case.

Respectfully submitted,

Jennifer Arbittier Williams
Acting United States Attorney

Robert E. Eckert
Assistant United States Attorney

Date: June 30, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2021, I electronically sent the foregoing document to counsel for the defendant via electronic mail.

Robert E. Eckert
Assistant United States Attorney