IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MALIK WALKER, <br><br>                    Defendant. | CRIMINAL NO. 20-216 |

**OPINION**

**Slomsky, J.**                                                                                                                           **August 5, 2024**

**I.      INTRODUCTION**

On November 27, 2023, pro se Defendant Malik Walker ("Defendant") filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). (Doc. No. 43.) In his Motion, Defendant requests the Court to reduce his 120-month sentence of incarceration to a term of time served followed by supervised release because his "extraordinary and compelling reasons" warrant release under that statute. (Id. at 1.) In support of this contention, Defendant provides three reasons as to why his release should be granted: (1) the need to care for his minor child; (2) the unjust length of his sentence and purported lack of due time credit; and (3) the threat of COVID-19. (Id. at 17-26.) He adds that he takes full responsibility for his actions that led to his incarceration and shows a "commitment to change." (Id. at 27-28.) Defendant asserts that each of his reasons "alone or combined" warrant reducing his sentence under 18 U.S.C. § 3582(C)(1)(A)(i). (Id. at 17.)

The Government opposes Defendant's Motion, submitting that he "does not present an 'extraordinary and compelling reason' allowing consideration under the statute" and that the sentencing factors set forth in 18 U.S.C. § 3553(a) do not warrant compassionate release. (See

1

Doc. No. 44.) For reasons that follow, Defendant's Motion for Compassionate Release (Doc. No. 43) will be denied.

## II.     BACKGROUND

### A.     Defendant's Criminal History

On March 25, 2019, a confidential source ("CS-1") informed investigators that Defendant was distributing illicit narcotics in Southwest Philadelphia. (Doc. No. 44 at 1.) Investigators thereafter instructed CS-1 to meet with Defendant to purchase crack cocaine. (Id. at 2.) On April 15, 2019, CS-1 was recorded via a video and audio recording purchasing 33.04 grams of crack cocaine from Defendant. (Id.)

On August 4, 2020, a federal grand jury returned an indictment charging Defendant with one count of distribution of 28 grams or more of a substance containing a detectable amount of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) ("Count One"). (See Doc. No. 1.) On March 17, 2021, Defendant pled guilty to Count One in accordance with a plea agreement. (Doc. No. 34 at 2.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties requested the Court to impose a sentence of 120 months' imprisonment, followed by eight (8) years supervised release, and a $100 special assessment.[1] (Id.)

---

[1]   Federal Rule of Criminal Procedure 11(c)(1)(C) states in pertinent part:

> (1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> . . .
>
> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor

### B. Defendant's Sentence

On July 7, 2021, at Defendant's sentencing, his base Offense Level was calculated to be 24.[2] (Doc. No. 44 at 2.) However, Defendant is also a career offender, with several prior convictions for controlled substance offenses within the previous fifteen years.[3] (Id. at 2-3.) Thus, Defendant's offense level became 34 under U.S.S.G. § 4B1.1(b)(2) and lowered to 31 after the deduction of 3 levels for acceptance of responsibility under U.S.S.G § 3E1.1.[4] (Id. at 3.)

---

<blockquote>
does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).
</blockquote>

Fed. R. Crim. P. 11(c)(1)(C).

[2] Pursuant to U.S.S.G. § 2D1.1(a)(5), (c)(8), "[a]t least 28 [grams] but less than 112 [grams] of Cocaine Base" provides a base offense level of 24. Here, Defendant sold 33.04 grams of crack cocaine to the confidential source.

[3] Pursuant to U.S.S.G. § 4B1.1(a), a defendant becomes a career offender if (1) defendant was at least eighteen years old when defendant committed the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offence; and (3) defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. See U.S.S.G. § 4B1.1(a). Here, Defendant's prior convictions qualified him as a career offender.

In 2002, Defendant was convicted for two separate convictions for possession with intent to deliver a controlled substance. (Doc. No. 44 at 3.) He was sentenced to 36-72 months' imprisonment to run concurrently for both convictions. (Id.) In 2009, Defendant had another conviction for possession with intent to deliver a controlled substance and was sentenced to 6-12 years in state prison. (Id.)

[4] Defendant's offense level was lowered 3 levels for acceptance of responsibility according to U.S.S.G § 3E1.1, which states in pertinent part:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid

Because Defendant is classified as a career offender, his criminal history category is automatically VI. U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.") As a result, the guideline range for Offense Level 31 with a Criminal History Category of VI is 188-235 months' imprisonment. U.S.S.G. § 4B1.1(b). But, as stated previously, Defendant agreed to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement of 120 months' imprisonment, eight (8) years of supervised release, and a $100 special assessment. (Doc. No. 34 at 2.) On July 7, 2021, the Court accepted the plea agreement and imposed the sentence of 120 months' imprisonment, eight (8) years supervised release, and a $100 special assessment. (See Doc. No. 37.)

Defendant is serving his 120-month sentence at the Federal Correctional Institution, Fort Dix ("FCI Fort Dix") and has a minimum release date of June 13, 2030. (Doc. No. 44 at 4.) Currently, he has served approximately 29 months of his sentence and has accumulated 2 months of good conduct time.[5] (Id.) Thus, he has effectively served approximately 31 months of his 120-month term. (See id.)

### C. Defendant's Motion for Compassionate Release

On July 23, 2023, Defendant sent a request for compassionate release to the Warden at FCI Fort Dix. (Doc. No. 43 at 4.) In doing so, Defendant states that he has satisfied the administrative exhaustion requirement of § 3582(C)(1)(A) because he received no response after over thirty (30) days elapsed. (Id.)

---

preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G § 3E1.1(a-b).

[5] His 29 months of time served includes credit for time in federal custody from September 5, 2020 to September 21, 2021 and his time in federal custody from March 22, 2023 to the present. (Id.) Prior to March 22, 2023, Defendant served time in state prison for a probation violation. (Id.)

On November 27, 2023,[6] Defendant filed his pro se Motion for Compassionate Release. (See Doc. No. 43.) As noted previously, Defendant alleges that the following reasons qualify as "extraordinary and compelling," and warrant his release: (1) the need to care for his minor child; (2) the unjust length of his sentence and purported lack of due time credit; and (3) the threat of COVID-19. (Id. at 17-26.)

Initially, Defendant seeks to be released to care for his minor child. (Id. at 17-18.) The child's mother, Zakiyyah Yasmeen Allen, passed away on February 27, 2023. (Id.) The child is being cared for by Defendant's mother, who he states has several medical conditions and anticipates a surgery. (Id.) Defendant insists that his child would be best served by strengthening their relationship through his care. (Id.)

Next, Defendant alleges that his sentence length is inequitable and subject to racial disparities. (Id. at 18-23.) Defendant provides support for his argument by stating that crack cocaine offenses are subject to longer sentences than powder cocaine offenses. (Id.) He contends that his sentence should have been in line with the powder cocaine guidelines, although he concedes that the Government provided him a significant sentencing reduction in the plea agreement. (Id.) However, he argues that it does not "erase the racial disparity he was subjected to." (Id. at 21.) Defendant further notes that the Bureau of Prisons ("BOP") has not given him credit for time spent in state custody. (Id. at 22-23.) He was sentenced to an 18-month term for a probation violation, which he believes should be credited towards his current sentence. (Id.)

Finally, Defendant contends that the Court should consider the effects and mismanagement of COVID-19 at FCI Fort Dix, as well as the emergence of new variants. (Id. at 5-10, 23-26.) Despite conceding that the Third Circuit Court of Appeals has stated that vaccine availability

---

[6] Defendant's pro se Motion was docketed on November 28, 2023.

dismisses COVID-19 as a basis for compassionate release, Defendant argues that the emergence of new variants should serve as a means for reconsideration. (Id. at 25-26.) He also notes that the BOP "simply cannot be trusted to keep inmates safe." (Id. at 24-25.)

In evaluating the 18 U.S.C. § 3553(a) sentencing factors, Defendant submits that he takes full responsibility of his actions and seeks measures for self-improvement. (Id. at 27-28.) He suggests that his reformative conduct "weigh heavily on the Court's consideration" of his Motion. (Id. at 16.) With respect to concerns about reintegrating into society, he suggests that the Court impose any release restrictions it deems appropriate. (Id.)

### D. Government's Response in Opposition to Defendant's Motion

On February 13, 2024, the Government filed a Response in Opposition to Defendant's Motion to Reduce Sentence. (Doc. No. 44.) In its Response, the Government argues that Defendant's Motion should be denied, submitting that "[n]one of the grounds presented by Walker are sufficient to warrant consideration for compassionate release." (Id. at 7.) The Government also notes that "release is not warranted upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a)." (Id. at 1.)

First, the Government states that Defendant's family circumstances are not extraordinary. (Id. at 7-8.) The Government argues that Defendant has not established that all potential caregivers of his minor child are incapacitated. (Id.) It further adds that the child's grandmother, who is currently caring for the child, is not completely disabled despite her medical circumstances. (Id. at 8.) Therefore, she is not rendered entirely incapacitated. (Id.)

Second, the Government rejects Defendant's argument—that his sentence is unduly long and subject to racial disparity—as a basis for compassionate release. (Id. at 9-10.) It notes that the Government "acted leniently in agreeing to a sentence significantly below the guideline range."

6

(Id. at 9.) Additionally, the Government dismisses his argument regarding racial disparity in the sentencing of crack cocaine versus powder cocaine, stating it is "entirely misplaced." (Id.) It adds that his guideline range for sentencing was 188-235 months' imprisonment because he is a career offender under U.S.S.G. 4B1.2(b)(2). (Id. at 9-10.) Similarly, Defendant's claim that he has been deprived of credit for time spent in state custody is not relevant here because under the law the United States Bureau of Prisons decides whether to give credit for time spent in state custody. (Id.) Thus, this is not an extraordinary circumstance warranting compassionate release. (Id. at 10.)

Third, the Government asserts that Defendant's risk of exposure to COVID-19 is not a sufficient basis to justify release. (Id. at 10-12.) It submits that the mitigation of the virus, as well as the availability of vaccines to prisoners, lowers the threat of exposure. (Id. at 11.) Also, the Government states that Defendant presents no evidence suggesting he is subject to a higher risk due to his age and health. (Id. at 12.) It concludes that it is "not aware of any court during the past two years granting release based only on the threat of the virus." (Id. at 11.)

Finally, the Government submits that even if Defendant's circumstances presented a basis for consideration, the 18 U.S.C. § 3553(a) sentencing factors do not warrant compassionate release. (Id. at 12.) Considering the Defendant's criminal history and nature of the offense, the Government submits that he remains a danger to the community. (Id.) Also, it argues that release would be inappropriate due to "serving only about one-[fourth] of a 120-month sentence for a serious drug crime." (Id. at 13.)

III.   DISCUSSION

    A. The Analytical Framework Regarding Motion for Compassionate Release Pursuant to Section 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general

7

"rule of finality[,]" including the compassionate release statute § 3582(c)(1)(A). <u>Freeman v. United States</u>, 564 U.S. 522, 526 (2011). As amended by the First Step Act, Section 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). The statute provides, in part, that:

> the Court, upon Motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction[.]

§ 3582(c)(1)(A). Congress, however, has not specifically defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a)(1)-(3).

Under the most recently amended Policy Statement, which took effect on November 1, 2023, Section 1B1.13(b) states "extraordinary and compelling reasons" exist under any of the following circumstances or a combination thereof: a defendant's (1) medical circumstances, (2) age, (3) family circumstances, (4) abuse, (5) other reasons similar in gravity to (1)-(4), or (6) unusually long sentence.  § 1B1.13 (b)(1)-(6).  In the instant case, the applicable factors are:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT. —

    (D)    The defendant presents the following circumstances—

        (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

        (iii)    such risk cannot be adequately mitigated in a timely manner.

\* \* \*

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT. —

    (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

    (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family members or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

* * *

(5) OTHER REASONS. — The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) UNUSUALLY LONG SENTENCE. — If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13 (b)(1), (3), (5)-(6).

The Third Circuit has noted that "if a court finds that [extraordinary and compelling reasons] exist, it then turns to the sentencing factors in 18 U.S.C. § 3553(a) to determine whether compassionate release is appropriate." United States v. Stewart, No. 22-2770, 2023 WL 7509457, at *1 (3d Cir. Nov. 14, 2023). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). If a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion will be denied because he has not demonstrated an extraordinary and compelling reason for his release. Furthermore, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[7] Each of these conclusions is discussed <u>seriatim</u>.

---

[7] Because the Motion for Compassionate Release is being denied for these reasons, there is no need to decide if a reduction is consistent with policy statements of the Sentencing Commission.

### 1. Defendant's Family Circumstances Do Not Present an Extraordinary and Compelling Reason for His Release

First, Defendant's desire to care for his minor child after the death of the child's mother, and the medical circumstances of the child's grandmother, do not present an extraordinary and compelling reason for his release. (See Doc. No. 43 at 17-18.) To prevail on a motion for compassionate release on grounds that a defendant is the sole person available to care for their minor child, a defendant must prove that all other potential caregivers of the child are incapacitated. U.S.S.G. § 1B1.13 (b)(3); see also United States v. Cruz Rivera, No. CR 11-43, 2020 WL 5993352, at *6 (E.D. Pa. Oct. 9, 2020). A person is incapacitated when they are "completely disabled" or "totally confined to a chair or bed." Id. at *7.

In this case, Defendant fails to present evidence that his child's caretaker is incapacitated. To the contrary, Defendant states that his mother, Mrs. Walker, is currently caring for the child. (Doc. No. 43 at 17.) He states that Mrs. Walker "has numerous medical conditions, and is presently awaiting a significant in-patient surgery." (Id.) Nonetheless, Defendant states that Mrs. Walker will continue to provide her best care to the child, refuting the idea that she is completely disabled. (Id. at 18); see United States v. Nassida, No. CR 14-241, 2020 U.S. Dist. LEXIS 145306, at *6 (W.D. Pa. Aug 13, 2020) (denying defendant's motion for compassionate release for lack of shown incapacitation notwithstanding wife's pre-breast cancer treatment and knee replacement surgery).

In the event that an upcoming surgery would render her incapacitated, which has not been proven, Defendant has also not shown that he is the only person available to provide care for the child. Instead, Defendant contends that his child would be "best served by establishing a strong relationship with [his] remaining parent" after the loss of the child's mother. (Id. at 17-18.) He makes no mention of any other possible caretaker. While the Court sympathizes with Defendant's family situation, the circumstances alleged do not show that Mrs. Walker is incapacitated, or that

another caretaker is entirely unavailable. As such, Defendant has not shown that his family circumstances are so extraordinary and compelling as to warrant compassionate release.

### 2. Defendant's Sentence Length Does Not Present an Extraordinary and Compelling Reason for His Release

Second, Defendant's disagreement with the duration of his sentence is not an extraordinary and compelling reason for his release. In his Motion, Defendant argues that a sentencing disparity between crack and powder cocaine offenses resulted in an unduly long sentence. He further asserts that he has not been given purported due credit for time spent in state custody.

However, Defendant was lawfully sentenced pursuant to a plea deal to a term well below the applicable guideline range.[8] In the context of Section 1B1.13(b)(5)[9], Defendant's contention that he should be released to "help correct this racially motivated disparity" is not accurate given his career offender status under U.S.S.G. 4B1.2(b)(2), which led to the rise in the guidelines applicable to his sentence. (Doc. No. 43 at 21.) Nor is it sufficiently similar in gravity to the other factors in Section 1B1.13(b). Moreover, Defendant asserts that his sentence was unnecessarily long. (Doc. No. 43 at 18.) But Defendant has not served "at least 10 years of the term of imprisonment" to even qualify for a consideration of Section 1B1.13(b)(6). In short, the Third Circuit has explained that "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." United States v. Andrews, 12 F.4th 255, 260-261 (3d

---

[8] As noted above, Defendant's guideline range was calculated to be 188-235 months' imprisonment because the offense involved 33.04 grams of cocaine base and Defendant is a career offender under U.S.S.G. 4B1.2(b)(2). However, Defendant agreed to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement of 120 months' imprisonment, eight (8) years of supervised release, and a $100 special assessment. (Doc. No. 34 at 2.)

[9] U.S.S.G. Section 1B1.13 (b)(5) states: "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

Cir. 2021). As a result, Defendant's argument that his sentence imposed by the plea agreement is unduly long does not warrant compassionate release.

Furthermore, Defendant states that if the Court rejects his "policy disagreement," he asks it to consider that he has been denied credit for time spent in state custody for a separate probation violation. (Doc. No. 43 at 22.) However, this argument is not a reason which would fall under Section 1B1.13(b)(6) or suffice as grounds for a compassionate release consideration under any provision. The authority to calculate a federal prisoner's time served is delegated to United States Bureau of Prisons ("BOP"). The Third Circuit has repeatedly stated that any claim which disputes the BOP's calculation of sentence credits should be addressed in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See United States v. Vidal, 647 F. App'x 59, 60 (3d Cir. 2016). Hence, this claim cannot constitute an extraordinary and compelling reason to warrant compassionate release.

### 3. Defendant's Medical Conditions Do Not Present an Extraordinary and Compelling Reason for His Release

Defendant asserts that COVID-19 presents a compelling reason for his release due to the "gross mismanagement and the emergence of more highly contagious and antibody resistant variants." (Doc. No. 43 at 23.) In general, however, "[c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Therefore, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." (Id. at 596-597.)

Here, Defendant has not submitted that his age or health would place him at a uniquely high risk to suffer severe medical conditions or death should he contract COVID-19. He also does not assert that he is denied access to the vaccine. Rather, Defendant contends that the disease "cannot be effectively mitigated" in his institution due to the BOP's "gross mismanagement." (Doc. No. 43 at 23.) A dissatisfaction with the BOP's mitigation efforts alone does not warrant compassionate release. See United States v. Fountain, No. CR 12-155-01, 2023 WL 5593971, at *8-9 (E.D. Pa. Aug. 29, 2023), aff'd, No. 23-2675, 2024 WL 94097 (3d Cir. Jan. 8, 2024).[10]

Moreover, Defendant has provided no individualized explanation as to why he, or his institution, is particularly affected by COVID-19 or the BOP's mitigation protocol. Access to the vaccine does not immediately dismiss a consideration for early release on COVID-19 grounds, but Defendant is forty-five (45) years old and healthy which significantly underscores the argument that he is not sufficiently protected by the vaccine. (Doc. No. 44 at 12.); United States v. Walker, No. 96-CR-04-1-JPS, 2023 WL 2142210, at *12 (E.D. Wis. Feb 21, 2023) (denying defendant's

---

[10] For example, in Fountain, the district court denied defendant's motion for compassionate release despite her dissatisfaction with the BOP's management of COVID-19 and her medical concerns. Fountain, 2023 WL 5593971, at *8-9. The court noted that defendant is not at a uniquely high risk to COVID-19 and the BOP has implemented numerous precautions in its facilities to abate the spread. Id. at 9.

15

motion for compassionate release on COVID-19 grounds because his individual risk is merely speculative given his health and vaccination status).[11] In sum, the threat of COVID-19 to Defendant, given his age, health, and access to the vaccine, does not present an extraordinary and compelling reason for compassionate release.

### 4. The § 3553(a) Sentencing Factors Weigh Against Defendant's Release

Finally, even if Defendant had extraordinary and compelling reasons warranting a reduction, the relevant § 3553(a) factors do not support Defendant's release. First, the Court has examined Defendant's history and characteristics, as well as the nature and circumstances of the offense. See 18 U.S.C. § 3553(a)(1). While the Court acknowledges Defendant's commendable efforts to rehabilitate himself, the efforts alone do not amount to an extraordinary and compelling reason for compassionate release. Moreover, the offenses that led to his incarceration are serious crimes. Defendant has been convicted of several felony drug offenses, resulting in a career offender classification.[12] Considering the foregoing, the Court is not assured that Defendant would be deterred from committing additional crimes if released.

The Court has also considered whether Defendant's release would reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See 18 U.S.C. § 3553(a)(2)(A)-(C). As of now,

---

[11] The court in Walker provided support for its dismissal of defendant's motion for compassionate release by stating "the risk calculus has changed significantly given the introduction of several very effective and increasingly widely available vaccines that inoculate against COVID-19." Walker, 2023 WL 2142210, at *19.

[12] As discussed previously, Defendant has previous convictions for possession with intent to deliver a controlled substance. In 2002, Defendant was sentenced to 36-72 months' imprisonment to run concurrently for two separate convictions for possession with intent to deliver a controlled substance. (Doc. No. 44 at 3.) In 2009, Defendant was convicted of possession with intent to deliver a controlled substance and was sentenced to 6-12 years in state prison. (Id.) During his time on state parole, he committed the instant offense. (Id.)

Defendant has only served approximately 31 months of his 120-month sentence—a sentence which was already below the applicable guideline range. Cutting the sentence to 31 months would not afford deterrence, given the Defendant's repeated convictions for controlled substance offenses. Ordering his release at this point would not reflect the seriousness of his convictions or provide due punishment.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See 18 U.S.C. § 3553(a)(6). Defendant argues that his sentence was subject to disparities within drug convictions. However, Defendant acknowledges that his sentence is below the applicable guidelines. To reduce Defendant's sentence at this point would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Therefore, none of the applicable § 3553(a) factors favor Defendant's release.[13]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3553(c)(1)(A)(i) (Doc. No. 43) will be denied. An appropriate Order follows.

---

[13] The Court has also considered the other "extraordinary and compelling" reasons noted in U.S.S.G. Section 1B1.3(b). None apply to Defendant.